(9 Misc. Rep. 419.)

ANSTETH v. BUFFALO RY. CO.

(Superior Court of Buffalo, General Term.  July 5, 1894.)

STREET CARS—INJURY TO BOY STEALING RIDE.
  Plaintiff, a young boy, boarded defendant's street car, intending to ride
  until the conductor should come where he stood, and then to jump off
  while the car was in motion.  The conductor, without being noticed by
  plaintiff, came to where he was standing, and by a sudden motion and
  ejaculation frightened him, causing him to fall.  *Held*, that defendant was
  liable.  White, J., dissenting.

Appeal from trial term.

Action by Howard J. Ansteth, by guardian, against the Buffalo
Railway Company.  From a judgment entered on a verdict in favor
of plaintiff, and from an order denying a motion for a new trial,
defendant appeals.  Affirmed.

Argued before HATCH and WHITE, JJ.

C. M. Bushnell, for appellant.
Adolph Rebadow, for respondent.

HATCH, J.  It appears without conflict of evidence that plain-
tiff was a trespasser upon defendant's car, and it may be assumed
that he intended, when he boarded the car, to ride thereon until
the conductor approached where he stood, and then alight while
the car was in motion; but the jury have found that while he was
thus upon the car, and while it was in rapid motion, the conductor,
without the boy's knowledge, came to the front of the car, made a
motion towards the boy, and uttered an ejaculation, which acts
frightened and caused him to suddenly loose his hold on the rail
of the dash, in consequence of which he was thrown from and under
the car, receiving the injury complained of.  Upon the trial, the
motion made by the conductor was illustrated to the jury, but it
is not described in the record.  Enough is stated, however, to
show that he reached out towards the boy, or made a motion to-
wards him with his hand, and at the same time uttered the ejacula-
tion.  The jury were therefore authorized to find—and such is the
effect of their verdict—that the acts of the conductor were intended
to and had the effect of causing the boy to leave the car at the time
and in the manner in which he did.  It was the conductor's duty
to keep his car free of trespassers, and he had the undoubted right
to put the boy off the car; but he was required to do it in a proper
manner, having regard to the safety of the person.  The conductor
had no right, by demonstration and ejaculation, to produce fear,
and thus cause the boy to attempt to alight or loose his hold, if, by
so doing, he unnecessarily exposed the boy to the hazard of injury,
any more than he had the right by physical power to expose him to
the same injury; and, if what the conductor did caused the boy to
act involuntarily, and destroyed the exercise of care and caution
for the protection of his person which he could or would otherwise
have exercised, and from which the injury resulted, such act was
without authority, and carried with it responsibility for the damage

sustained. Clark v. Railroad Co., 40 Hun, 605, affirmed 113 N. Y. 670, 21 N. E. 1116; McCann v. Railroad Co., 117 N. Y. 505, 23 N. E. 164. As before observed, the finding of the jury upon this question is favorable to the plaintiff. There is a sharp conflict in the evidence respecting the conduct of the conductor, and also tending to establish that the injury was the result solely of the boy's acts; but there was sufficient to submit to the jury, and they have found that a case was made out, and such finding is conclusive upon us. The judgment and order appealed from should be affirmed.

WHITE, J. (dissenting). On the 21st day of October, 1893, the plaintiff, who was then a very bright and intelligent boy, nine years old, got upon the lower step of the platform of one of the defendant's street cars, as it started, for the purpose of "stealing" a ride, holding onto the dashboard of the car with his right hand, and holding in his left hand a handle affixed to the front of the body of the car, at the side where he stood. While in this position, and after the car had acquired an ordinary rate of speed, the conductor approached, and perhaps stepped out upon the front platform, and extended one or both of his hands towards the boy, and exclaimed, "Hey!" As the conductor did this, the boy loosed his hold upon the dashboard, his body swung around under the car, and he was injured. As he looked up and saw the conductor and heard the exclamation, he was frightened, and claims that the fright caused him to loose his hold, and that, therefore, it was the proximate cause of the injury. The plaintiff frequently indulged in the practice of stealing rides on the street cars. He knew it was wrong, and that it was dangerous, and that he was liable to get hurt. It was his habit, when stealing rides in this way, to watch for the approach of the conductor, in order to jump off before the conductor could get near enough to catch him. On this occasion he followed his usual custom in this respect, but, for some reason, failed to observe the approach of that official until he was upon the front platform. There is, in fact, a sharp and decided conflict in the evidence concerning the movements and acts of the conductor, but the jury found them to be substantially as narrated above, and we will assume that the evidence justifies that finding. The theory upon which the case was tried, and upon which it was submitted to the jury, is that the jury were authorized to find from the evidence that the plaintiff was induced to loose his hold of the dashboard by a well-grounded fear of violence and bodily harm at the hands of the conductor, and that, therefore, the act of the conductor caused the injury complained of. No claim is made by the plaintiff but that he fully understood and comprehended the danger involved in the practice in which he was engaged. He testifies to the fact himself, and therefore he was guilty of such contributory negligence as will preclude a recovery, unless, as claimed by him, he was frightened by the act and exclamation of the conductor, and had reasonable cause to apprehend violence and bodily harm at his hands, and the injury resulted solely from his attempt to escape such violence and bodily harm. Schmidt v. Cook, 1 Misc. Rep. 227, 20 N. Y. Supp. 889.

It is urged by the defendant that error was committed upon the trial in permitting the plaintiff's mother, then testifying as a witness, to be asked whether, at the time of the accident, she kept a servant or did her own housework. The question was not answered, and so no harm resulted from it. The defendant also insists that error was committed in allowing the plaintiff to testify that he was frightened when he discovered the conductor on the platform, and to give that as a reason for loosing his hold upon the dashboard. I do not think the admission of that evidence was erroneous; nor do I think the case of Abbott v. People, 86 N. Y. 460, relied upon by the defendant as an authority in its favor on this point, supports its claim; nor can it be said from the amount of damages awarded that the jury was influenced by passion, prejudice, or corruption, or that the verdict is excessive. Akerslook v. Railroad Co. (Super. N. Y.) 15 N. Y. Supp. 864; Ehrman v. Railroad Co. (Sup.) 14 N. Y. Supp. 336.

The vital question on this appeal is whether or not the evidence justifies the inference that the plaintiff attempted to leave the car, or loosened his hold upon the dashboard, solely in consequence of a reasonable apprehension or fear of bodily harm at the hands of the conductor. If such an inference is not warranted by the evidence, then the verdict should not be allowed to stand. Hogan v. Railroad Co., 124 N. Y. 647, 26 N. E. 950. As bearing upon this proposition, the plaintiff himself says:

"The conductor came through the car, and did like that to me [indicates that the conductor made a motion towards him with one or both hands], and hollered 'Hey!' to me. I got scared, and let go with my right hand, and I got dragged about ten or fifteen feet, and then I let go. I was afraid of the conductor. John Pfeiffer was playing with me that day. We just came from the store. We used to take rides on the cars sometimes. I don't know how often I had jumped on and off the cars in this way. This was the first time when I was on the platform [probably meaning front platform]. I was not watching for the conductor. I had looked in the window, and seen the conductor before in the car when I was on the step. I had not ridden on the front step of the car before just as I was riding then. This was the first time. I had jumped on the hind platform before, and ridden there, when I was stealing a ride. I could not tell how many times I had done that,—quite a number of times. I knew it wasn't right to jump on a car in that way. When I have been on the rear platform in that way, hanging on the car, I have looked up into the window, and seen the conductor. I would have to keep a watch on the conductor, so he would not catch me. I paid no attention to him on this day. I knew, when I was riding on these steps of the car, when the conductor came back towards me, I would jump off, and jump off before he got to me. I would not let him get hold of me. I knew that, in jumping on the cars and jumping off again in that way, I was likely to get hurt by it. When I stood there, I could look back into the car, but I didn't. I didn't see the conductor at all until he came up to the door. When I was riding on the back step in that way, I used to keep watch on the conductor. I didn't here, because I didn't think about it."

John Pfeiffer, the plaintiff's companion, who was also stealing a ride upon the other end of the car, says he was watching the conductor all the time very closely, so that, when he should come towards the rear of the car, he could jump off, as he did not want the conductor to catch him on the car.

To my mind, if there is any fact established by a fair preponder-ance of the evidence in this case, it is that, when the plaintiff got upon the platform of the car on the occasion in question, it was not with the intention to become a passenger, or to ride to any particular point or place, but solely for the purpose of stealing a ride, with the intention to jump off whenever he should observe the conductor's approach to the front end of the car. He says he forgot to watch for his approach, and when he appeared upon the platform, and made the motion with his hand, and hollered "Hey!" he was scared, and loosened his hold. Whether the novelty of the experience in stealing a ride upon the front platform had so absorbed his attention that he forgot to look for the approach of the conductor, or whether his approach had been concealed by passengers, as is indicated by the evidence of some of the witnesses, is not quite certain; but certain it is to my mind that the plaintiff's attempt to leave the platform was not solely in consequence of what the conductor said or did, but was in pursuance of his intention to do so, when he got upon the platform, whenever the conductor should approach the point where he stood. When injured, he was attempting to do just what he had done many times before, and just what he intended to do when he got upon the platform of the car. He does not even say he believed, or had any reason to suppose, that the conductor would do him bodily harm. The case is barren of evidence which would justify such an apprehension. There is no evidence that any threat of violence was made by the conductor by word or act. As this case appears to me, it is easily distinguishable from the cases of McCann v. Railroad Co., 117 N. Y. 505, 23 N. E. 164, and Clark v. Railroad Co., 40 Hun, 605. In those cases the parties injured were induced to jump from moving cars in consequence of an actual physical assault by the defendant's servants in one case, and of threatened bodily harm in the other. In neither was the act which resulted in the injury premeditated or in pursuance of a design to perform it when boarding the car, while in the case at bar it was. It seems clear to me that no sufficient reason exists for charging the defendant with responsibility for the consequences of this unfortunate accident, and that, therefore, the order and judgment appealed from should be reversed, and a new trial ordered, with costs to abide the event.